# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# BOSTON DIVISION

|  |  |  |
|---|---|---|
| JAMES P. RYAN, | ) | |
|   Plaintiff, | ) | |
| | ) | |
| | ) | |
| VS. | ) | CIVIL CASE NO: _____ |
| | ) | |
| | ) | |
| City of Everett Mayor DeMaria, | ) | |
| Russo, Breton, Desmond, Sheehan | ) | |
| Finocchio, Field, Sobolowski, Calderwood, | ) | |
| Murphy, Berge, Dekermenjian, Barringer, | ) | COMPLAINT |
| Mejia, Karimi, Verner, Silvia, Lee, Leone, | ) | |
| Silverstein, Austin, Kopelman, | ) | |
| Mondano, Miller, Freeman, Foley, Myers, | ) | JURY TRIAL REQUESTED |
| Durette, DeMore, Conley, Utke, | ) | |
| Cogliano, Looney, State Rep. McGonagle, Hegerty, | ) | |
| Day, Superior Clerk Sullivan, Bourquin, DA Ryan, | ) | |
| O'Neil, DA Rollins, Granda, O'Connor, Ridge, Greene, | ) | |
| St. Louis, Landry, Deveney, | ) | |
| Reusch, Phillipson, Fabricant, Carrion, | ) | |
| McLarney, Barrett, Adams | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

On April 22, 2009, James P. Ryan, Plaintiff (hereafter "Plaintiff") was the owner of the Property

known as 50 Liberty Street, Everett, Massachusetts, ("the Property").  Plaintiff purchased the Property

from his father back on or about June 1, 1998.   The Property had been rented out as an eight (8) rental

unit complex since Plaintiff Family ownership began in 1959, a fact that was openly known and

approved by the City of Everett. ("the City"). There were regular inspections carried out by multiple City

Departments during the course of the family ownership since 1959.

On the afternoon of April 22, 2009, a false fire alarm at the Property caused Plaintiff to be summoned to the Property location to investigate the problem.   When Plaintiff arrived at the Property, he was encountered by City Building Inspector Michael Desmond, ("Desmond") and Fire Lt. Paul Calderwood, ("Calderwood") who were already inside the Property doorway.   Mr. Desmond quickly stated to the Plaintiff, "Remember me?....Tell everyone to move out....This is a three (3) family and you have five (5) illegal apartments". **Mr. Desmond ordered the Property to be vacated immediately, with everyone under the threat of arrest.**   At that point, all tenants were immediately ordered to gather ALL of their belongings, as they were expelled from the premises permanently (or until the building could be brought up to Code). **The tenants and Plaintiff were all threatened with arrest by the Building Inspector if any of them "stepped foot on the property again".**

Shortly thereafter, Mr. Desmond gave Plaintiff five (5) notices of violations of the City's Ordinances, By Laws and Regulations.   These notices cited Plaintiff for various alleged violations of City Ordinances, to wit:

A.   CE NO. 4204 "5 Illegal apartments, using 3 Family as 8 Family";

B.   CE NO. 5205 "Total 5 apartments with no second means of egress";

C.   CE No. 5206 "Accumulated Combustible, Insufficient Smoke Detectors and CO2";

D.   CE No. 5208 "Operating 8 Illegal Rooming House within the city"; and lastly,

E.   CE No. 5209 "No sprinkler system."

The Property was subsequently boarded up, and all tenants were forced to leave. **Despite the fact that there were no prior notices or warnings about the Property being in violation of the above Regulations as required by Massachusetts General Laws Chapter 143; General Laws Chapter 139, 111 Section 123-125, noting that Plaintiff must abate the nuisances within twenty-four hours or within reasonable time thereafter, before action could be taken on the Property.  Nor was Plaintiff given an**

**opportunity to correct the alleged violations prior to the expelling of his tenants and the boarding up of the Property.**

Two (2) weeks later, Plaintiff received a six (6) page letter from the City's Building Department dated on or about May 4, 2009 detailing numerous Building Code and Zoning violations at the Property, some of which were not detailed in the Citations that were given to the Plaintiff. The letter instructed that "ALL the violations be corrected without delay" and threatened daily penalties if the alleged violations were not corrected, even though the Building Inspector had specifically threatened the Plaintiff with arrest if he "stepped foot on the property again".

On or about May 8, 2009 Attorney Evan Gellar, on behalf of the Plaintiff, sent a letter to the Clerk Magistrate's Office of the Malden District Court contesting the alleged violations served, and requesting an immediate Hearing on the subject Property.  A Hearing was initially set for May 28, 2009 in Malden District Court, which was later postponed all the way until October 15, 2009.  However, during that extended time span, Plaintiff remained barred from the premises under the threat of arrest, in the face of the fact Plaintiff was instructed to rectify the violations, and that no adjudication had been rendered on the City's alleged complaints.

At the October 15, 2009 Hearing, the City requested a dismissal of all Citations because according to the City Assistant City Solicitor Melissa Murphy ("Murphy"), there was "not enough evidence to go forward" but the City still requested $10,000 despite their willingness to dismiss the Citations. An Agreement was offered by Plaintiff that he would pay $5,000 towards the fines on account of the Citations.  Not having the money at the time of discussion, Plaintiff offered that the City could put a lien against the Property for a specific dollar amount of $5,000 which would be collected when the Property was sold. Assistant City Solicitor Murphy agreed to this Offer and the Court Clerk agreed to this Agreement. **Access to the Property was to be restored upon dismissal of the Case.  Keys to Plaintiff's**

**Property were not brought to the Hearing, thus violating his rights to retain his Property after the City decided that there was "not enough evidence to go forward".** The Case was then continued until April 12, 2010, but the threat of arrest was not lifted by the Atty. Murphy.

Atty. Murphy was to prepare the Lien document, and despite numerous calls by Plaintiff's two (2) attorneys, the document was never provided to Plaintiff.  On April 12, 2010, Plaintiff once again appeared at the Malden District Court for the Hearing, and no one representing the City appeared. **However, despite the Agreement that Plaintiff would have access to the Property, Plaintiff was NOT allowed access to the Property to make the necessary repairs to obtain his rental income needed to restore and maintain the mortgage on the home,** and as a direct result of this breach, the Property was foreclosed upon in June, 2010 by US Bank National Association.

The Foreclosed Deed of the sold Property of the sum of $219,522.13 was recorded at the Middlesex South Registry of Deeds, Book 55081, Page 286.

During the months of September through November 2010, Plaintiff was in contact with Attorneys from the Middlesex District Attorneys and Attorney General's Office **regarding his failure to receive his entitlement to Due Process of Law as defined in the Fourteenth Amendment of the United States Constitution. It was the Plaintiff's belief and assumption that bringing copies of files and evidence of his rights being violated since the taking of his Property on April 22, 2009 would be looked into and investigated by the respective legal authorities. Said Plaintiff had an expectation that his concerns would be investigated and not brushed off and cast aside as an unimportant matter.**

On November 4, 2010.  US Bank National Association, as Trustee for the Holder of Home Equity Pass Through Certificate Series 2003-1, sold the Property for the sum of $150,000 to one Gregory T. Antonelli, a friend, associate, and political supporter of the Lead Defendant, City of Everett Mayor Carlo DeMaria, Jr. ("DeMaria").

4

Further attempts by the Plaintiff to engage State and Law Enforcement Agencies (including the Federal Bureau of Investigation) since 2009 have basically been futile in the sense that there has been an inordinate amount of missing files and lack of documentation discovered through Freedom of Information Requests and email correspondence.

On July 3, 2020, Plaintiff received an email from a Middlesex County District Attorney Investigator Mary O'Neil, ("O'Neil"), that new evidence of a subpoena-generated & verified Call Data Review of a Witness to Plaintiff telephone call during a Deposition at the Law Office of KP Law was not presented to the Presiding Judge who should not have been appointed to preside over the Plaintiff's case because of past conflicts of interest with related associates of a past notorious client of said Judge. **Repeated attempts until this filing have not been brought to the attention of the Court, thus denying Plaintiff his expected and anticipated <u>Due Process of Law and his Civil Rights.</u>**

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this suit because the claim in this case arises under the Laws of Massachusetts.

Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

James P.  Ryan, is the Plaintiff in this matter and currently has a business address of 1268 Broadway Unit C, #247, Saugus, MA 01906 and is Employed at Harrison Global, LLC.

The Lead Defendant, City of Everett Mayor Carlo DeMaria, Jr., is the Chief Official of Everett, located in the Commonwealth of Massachusetts. Everett is a City in Middlesex County, Massachusetts,

directly north of Boston, bordering the neighborhoods of Charlestown, Somerville, Chelsea, Revere, and

Malden.  The population was 41,667 at the time of the 2010 United States Census.

The Defendants:

- **City of Everett Mayor Carlo DeMaria, Jr.**; WORK ADDRESS: 484 Broadway, Everett, MA 02149. Mayor DeMaria's self- described "Campaign Financier" Jamie Russo (see separate listing) offered Plaintiff $500,000 for Plaintiff's Said Property prior to the 2007 Election. Mr. Russo claimed at the time of his #50 Liberty Street tour in August 2007, that if Mr. DeMaria won the Election, they "would be buying up property all over the City".  Mayor DeMaria has used his position as Mayor for his friends' financial gain. Mayor DeMaria also did not offer housing and shelter assistance to the eight (8) mostly minority tenants who were illegally displaced on April 22, 2009. On October 15, 2009, Asst. City Solicitor Murphy (see separate listing) stated that the five (5) April 22, 2009 Citations were being dismissed by the City of Everett because "the City never should have done what they did". Said Property was placed on the Commonwealth of Massachusetts Abandoned Property List with communications that the City of Everett did not have any contact with the Plaintiff. Associates of the aforementioned and subsequently appointed Director of Constituent Services Jamie Russo were either recommended, appointed, or awarded beneficial interests in Said Property by the time that his close business associate, Mr. Gregory T. Antonelli, purchased Said Property in November 2010 at a lower presented Offer on the purposely assigned Abandoned Property.  According to a 2020 Freedom of Information Act (FOIA) filed with the Massachusetts Attorney General's Office, it was discovered that on August 12, 2010, Assistant City Solicitor Jill Barringer (see separate listing) and Mayor DeMaria communicated and waived $5,000 in fines on the Said Property from the never-enforced verbal settlement with Plaintiff from October 15, 2009. It was discovered that on November 8, 2010, $5,000 (check #2945) was hand-delivered to Asst. City Solicitor Barringer for "full payment and settlement of the outstanding fines and penalties assessed by the City of Everett against the prior owner, U.S. Bank, NA". In later years, Mayor DeMaria misrepresented the City of Everett Housing/Relief Protocols in a June 2020 Episode of "Nightside With Dan Rea" on WBZ Radio when Plaintiff called into the Show to ask Mayor DeMaria a few questions regarding Due Process of Law and Civil Rights.

- **Jamie Russo, then-Director of Constituent Services,** City of Everett; MAILING ADDRESS: New Boston Real Estate Services, LLC., 111 Everett Avenue, Chelsea, MA 02150. In 2007, as self-described "Campaign Financier" for the aforementioned Candidate Carlo DeMaria, Mr. Russo offered to purchase Said 50 Liberty Street Property from Plaintiff and directed Revere Attorney Denise DiCarlo to create a $500,000 Purchase and Sales Agreement after Attorney Anthony Rossi confirmed with Everett City Hall Officials that eight (8) Townhouses could be built on Said Property. Plaintiff refused to pick up a $30,000 Deposit and sign the Purchase and Sales Agreement based on puzzling advice from a Mortgage Broker/Attorney Debra J. Breton (see separate listing). Mr. Russo was not pleased with the decision of the Plaintiff.

- **Atty. Debra J. Breton, Past Attorney/Mortgage Broker for Said Plaintiff**; MAILING ADDRESS: 83 Hammersmith Drive, Saugus, MA 01906. Atty. Breton forewarned and discouraged Said Plaintiff from signing the aforementioned $500,000 Purchase and Sales Agreement with the aforementioned Jamie Russo on Said Property. As this ordeal of illegally being evicted from and

losing the Said Property has played out over the past 12 years, it appears that Atty. Breton had a conflict of interest in acting in her Said Plaintiff client's best interests. The aforementioned Atty. Anthony Rossi benefitted through a clerical error from a referral Attorney of Atty. Breton and subsequently acquired another Plaintiff-owned property after a mysteriously-cancelled Public Auction in Everett, Massachusetts (7 Russell Street). Atty. Breton continues to bill Said Plaintiff for past services rendered between 2007-2009.

- **Michael Desmond, Building Inspector, City of Everett;** WORK ADDRESS: 484 Broadway, Everett, MA 02149. In the mid-1990's, Inspector Desmond insisted that Said 50 Liberty Street was a Commercial Property and denied Contractor Mark Passemato the ability to work on the Said Property  because his license only allowed him to work on upto three (3) family homes. Inspector Desmond allowed then Commercial Contractor/now State Representative Joseph McGonagle to give his Commercial License to Passemato to use for the vinyl siding job on Said Property. **According to a 2020 FOIA filed with the Massachusetts Attorney General's Office, it was discovered that in October 2008, Mr. Desmond inquired on the Said Plaintiff's Mortgage Balance as verified on a post-it note in his file, thus creating an invasion of his privacy. On April 22, 2009, Inspector Desmond arrived at a false alarm at the Said Property with the 50 Liberty Street file in his hands. He subsequently threatened the Plaintiff and eight (8) tenants with arrest if they did not follow his orders to vacate the property. Consequently, all of the tenants were illegally evicted within minutes without any due process of their rights for food or shelter nor were they given a 24 hour notice to correct any alleged violations.** Within minutes, Inspector Desmond then directed the expedient-arriving Action Emergency Services (see Gennaro Angiulo in later reference as Manager) to board up the Said Eight (8) Unit House. Inspector Desmond presented the Plaintiff with five (5) Citations. These Citations were ultimately dismissed at a scheduled Malden District Court Hearing on Oct 15, 2009. (see Assistant City Solicitor Melissa Murphy in separate listing). **He did not cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations. Furthermore, Said Plaintiff has the right to hire his own Board-Up Contractor if there is no fire nor an emergency.** From October 26, 2010 through December 3, 2010, Mr. Desmond also ignored Said Plaintiff's attempts to engage an Attorney (Atty. Christopher Maffucci of Casner & Edwards, LLP) by failing to communicate via phone, email, remit files, or comply to repeated requests so that Said Plaintiff could engage proper legal services. **Said Plaintiff was not able to engage Atty. Maffucci during this time-frame that the City of Everett claimed that they did not have any communication with the Said Owner of Said Property since 1998, thus creating an "Abandoned Property" for the Attorney General's Office to appoint an "Independent and Impartial Receiver".**

- **James Sheehan, then-Building Inspector (and Licensed Massachusetts Real Estate Salesperson in 2009 with MLS Inquiries into Said Property), City of Everett;** MAILING ADDRESS: 7 Mount Washington Street, Everett, MA 02149. **According to Re/Max Results Realtor Phillip Consolo, Mr. Sheehan held the Said Property keys on his own personal key ring after the April 22, 2009 Boarding, thus hindering any potential showings that could have occurred after the Plaintiff placed Said Property on the market on July 1, 2009.** In earlier conversations at another Plaintiff-owned property at 7 Russell Street in Everett, MA, Mr. Sheehan had explained in detail to the Plaintiff about the procedure for suspected illegal apartments in Everett, MA by using an Edith Street two (2) family home as an example. Ironically, while this conversation was happening, Gregory T. Antonelli (see Gregory T. Antonelli, GTA Contracting in later references as the eventual Buyer of Said 50 Liberty Street Property) was parked across the street (in front of 11 Russell Street) watching the discussion and happenings at this other Plaintiff-owned property of 7 Russell Street (that was ironically sold after a Cancelled Auction to the aforementioned Atty.

Anthony Rossi after the culmination of Mr. Sheehan notifying the tenants in the past not to pay their rent, an erroneous legal description filing technicality, and complicit advice from the aforementioned Atty. Debra Breton who was deemed to have a conflict of interest with the eventual buyer of this other Plaintiff-owned property at 7 Russell Street).

- **Steven Finocchio, Building Inspector, City of Everett;** MAILING ADDRESS: 46 Dartmouth Street, Everett, MA 02149. **Mr. Finocchio, adorned with a Badge on a chain around his neck, walked around the Said Property on April 22, 2009 intimidating everyone and threatening arrests.** He was directed by Inspector Desmond to "call Action".  Within minutes, Mr. Finocchio was escorting Action Emergency Services respondents onto the Said Property. **Mr. Finocchio refused to listen to the pleading Plaintiff not to board the House because it was all a mistake and the Plaintiff and eight (8) tenants all had rights to ownership, food, and shelter.** The Plaintiff reminded the Team of Inspectors that they had been in the House multiple times over the fifty-year Family Ownership by the Plaintiff's Family. **He did not cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.**

- **John Field, then-Building Inspector, City of Everett;** MAILING ADDRESS: Weston Town Hall, 11 Townhouse Road, Weston, MA 02493. Mr. Field placed a "Condemned Sign" on the Said Property just prior to a scheduled Public Auction and prevented the Plaintiff's Bank's Appraiser from having any access to the inside of the House, therefore preventing the scheduled Auction. **Mr. Field and his colleagues failed to follow Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.** He and his colleagues had no regard for the condemnation process of housing units.

- **Ed Sobolowski, Building Inspector, City of Everett:** WORK ADDRESS: 484 Broadway, Everett, MA 02149. Mr. Sobolowski obstructed the sale of Said Property by informing prospective buyers that the house was only three (3) units **(while it was continually assessed as a five (5) plus Commercial Property with nine (9) separate electric meters).** He did not cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.

- **Then-Deputy Fire Chief and Lt. Paul Calderwood, City of Everett:** MAILING ADDRESS: 132 Salem Street, Wilmington, MA 01887. Then-Deputy Chief and Lt. Calderwood stood at the door of Said Property with the aforementioned Building Inspector Desmond and adhered to the orders set forth to vacate and board Said Property. **He did not cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.**

- **Then-Assistant City Solicitor Melissa Murphy, City of Everett;** MAILING ADDRESS: North Andover Town Hall, 120 Main Street, North Andover, MA 01845.On October 15, 2009, while standing in the doorway of the Office of Malden District Court Assistant Clerk Magistrate Paul Burns, Asst. City Solicitor Murphy stated that the five (5) April 22, 2009 Citations were being dismissed by the City of Everett because "the City never should have done what they did". **She refused to put the agreed terms in writing as was suggested by the Plaintiff's Attorney Evan Gellar at the Hearing. (thus substantiating future communication in 2016 from KP Law that "everyone knows this was intentional").** Asst. City Solicitor Murphy agreed to draw up the settlement after she returned to her Office and fax it to the Plaintiff's Attorney Gellar. Not only did she fail to do so but she failed to remove the threat of arrest and failed to provide keys to the Plaintiff, thus denying his rights to ownership of Said Property. Asst. City Solicitor Murphy

refused to return numerous letters or telephone calls from the Plaintiff's Attorneys Gellar or subsequently, Attorney Frank Addivinola.

- **Attorney Matthew Berge, Commonwealth of Massachusetts Attorney General's Abandoned Property Division;** WORK ADDRESS: One Ashburton Place, Boston, MA 02108. According to a Second Week of October, 2009 **(Saved) Voicemail** from Re/Max Results Realtor Phillip Consolo, Atty. Berge visited the Said Property with City Solicitor Colleen Mejia. **Discussion about Said Property was conducted at Everett City Hall whereby a message was relayed to the Plaintiff that he "must take an Agent's cash offer by 4 pm that day or the City will knock down the house the next week".** Atty. Berge confirmed this information in a phone call with Plaintiff and Atty. Gregory Dekermenjian (see under separate listing) on Oct 13th, 2009. Both Attorneys General stated that the City had neglected to disclose the upcoming Hearing on October 15, 2009 and in fact, had stated they had no contact with the Plaintiff. **At no point during any communications did Atty. Berge cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations. It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.**
- **Attorney Gregory Dekermenjian, then-Director of the Commonwealth of Massachusetts Attorney General's Abandoned Property Division;** MAILING ADDRESS: Coldwell Banker, 633 Tremont Street, Boston, MA 02118. On October 13, 2009, Atty. Dekermenjian stated in a phone conversation with the Plaintiff and Atty. Berge that "the City neglected to tell us they were in contact with you, and neglected to tell us about the upcoming Thursday Hearing". Days after the Hearing when Asst. City Solicitor Murphy dismissed the Citations, Atty. Dekermenjian stated that he "could not help me (the Plaintiff) get the keys from the City because it wasn't my (his) job". **At no point during any communications did Atty. Dekermenjian cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.** According to a 2020 FOIA filed with the Massachusetts Attorney General's Office, it was discovered that in June 2010 Atty. Dekermenjian bypassed a potential Receiver (Mr. Mazzochia) suggested by the City of Everett (and promised him other future properties in Everett) and appointed Combined Resources Co., owned by Mr. Jonathan Kaye. **Mr. Kaye assigned one (1) of his employees, a long-time friend and associate of the aforementioned Jamie Russo, Mr. Frank Amato to be appointed as Receiver of Said Property. Mr. Russo was serving as Director of Constituent Services for the City of Everett at this point in time.** On July 27, 2010, Atty. Dekermenjian filed a Voluntary Dismissal with the Malden District Court to fully remove Said Plaintiff off of any paperwork. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.**
- **Then-Assistant City Solicitor Jill Barringer, City of Everett;** MAILING ADDRESS: Atty. Jill Barringer-Borgonzi, 1000 W 69th Terrace, Kansas City, MO 64113. According to the aforementioned 2020 FOIA with the Massachusetts Attorney General's Office, it was discovered that Asst. **City Solicitor Barringer called Everett Mayor Carlo DeMaria on August 12, 2010 to wipe out all fees and expenses during the City of Everett's Receivership possession of Said Property where the aforementioned Jamie Russo's long-time friend and associate Frank Amato worked for Combined Resources, Co.** This Firm, under the ownership of the aforementioned Jonathan Kaye, had been recommended by the aforementioned Attorney

Gregory Dekermenjian to serve as the Court-Appointed Receiver of the Said Property. **At no point during any communications did Asst. City Solicitor Barringer cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.**

- **City Solicitor Colleen Mejia, City of Everett;** WORK ADDRESS: 484 Broadway, Everett, MA 02149. City Solicitor Mejia was copied in an email to the aforementioned Atty. Dekermenjian where the City of Everett claims that there was no communication with the Plaintiff since 1998. **At no point during any communications did Solicitor Mejia cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.** The aforementioned contractor Mark Passemato told the Plaintiff that the eventual Buyer of Said Property, Gregory T. Antonelli and Solicitor Mejia had numerous lunches on the second floor while Mr. Passemato was completely gutting and renovating her first floor apartment without permits according to the Contractor.

- **Attorney Shiva Karimi;** MAILING ADDRESS: Law Offices of McLane, Middleton, 45 School Street, Second Floor, Boston, MA 02108. Atty. Karimi represented Mortgagee of Said Property during a foreclosure proceeding and had agreed to sell Said Property initially, during the Abandoned Property Receivership negotiations, to Buyer Santiuri for approximately $219,000. Atty. Karimi subsequently reversed course and notified Buyer Santiuri that the Sale to him was off. Subsequently, the aforementioned Gregory T. Antonelli, a friend of the aforementioned Mayor DeMaria, had his Offer on the Said Property accepted for approximately $69,000 less than the Buyer Santiuri Offer. According to a 2020 FOIA filed with the Massachusetts Attorney General's Office, it was discovered that on November 8, 2010, Atty. Karimi was carbon-copied in the aforementioned letter to Assistant City Solicitor Jill Barringer. In August 2010, Atty. Karimi was aware that Asst. City Solicitor Barringer and Mayor DeMaria had communicated and waived $5,000 in fines on the Said Property from the never-enforced settlement with Plaintiff on October 15, 2009. The $5,000 check (#2945) was hand-delivered to Asst. City Solicitor Barringer for "full payment and settlement of the outstanding fines and penalties assessed by the City of Everett against the prior owner, U.S. Bank, NA".


- **Then-Middlesex County Assistant District Attorney John Verner;** MAILING ADDRESS: Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114. In September and October 2010, then-Middlesex ADA Verner, Assistant Middlesex District Attorney Casey Silvia (see separate listing), and Assistant Middlesex District Attorney Warren Lee (see separate listing) reviewed Documents regarding illegal evictions and theft of Said Property. They reported that their Boss (Middlesex County District Attorney Gerry Leone) {see separate listing} determined that "there wasn't any corruption in Everett, so, they weren't going to be looking into it". These files vanished according to Middlesex County District Attorney Office Special Investigator William Freeman (see separate listing). **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.** In later years, Plaintiff had inter-action with Assistant Suffolk County District Attorney Verner regarding his "new (subpoena-generated & verified) evidence" being brought to the attention of his Boss, Suffolk County District Attorney Rachel Rollins (see separate listing). ADA Verner refused to provide this "new (subpoena-generated & verified) evidence" to anyone in Law Enforcement and the Judicial Courts.

- **Middlesex Assistant District Attorney Casey Silvia;** WORK ADDRESS: Office of Middlesex County District Attorney, 15 Commonwealth Avenue, Woburn, MA 01801. In September and October 2010, Middlesex ADA Silvia, the aforementioned Middlesex ADA John Verner, and Assistant Middlesex District Attorney Warren Lee (see separate listing) reviewed Documents regarding the theft of Said Property. They reported that their Boss (Middlesex County District Attorney Gerry Leone) determined that "there wasn't any corruption in Everett, so, they weren't going to be looking into it". In June 2020, ADA Silvia sent the Said Plaintiff to the Everett Police Department to file a Civil Rights Complaint. This File cannot be found at the Everett Police Department. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.**

- **Middlesex Assistant District Attorney Warren Lee;** MAILING ADDRESS: Office of Middlesex County District Attorney, 63 Fountain Street, #404, Framingham, MA 01702. In September and October 2010, Middlesex ADA Lee, the aforementioned then-Middlesex ADA John Verner, and the aforementioned Middlesex ADA Silvia reviewed Documents regarding the theft of Said Property. They reported that their Boss (Middlesex County District Attorney Gerry Leone) determined that "there wasn't any corruption in Everett, so, they weren't going to be looking into it". These files vanished according to the aforementioned Middlesex County District Attorney Office Special Investigator William Freeman. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.**

- **Former Middlesex County District Attorney Gerald (Gerry) Leone;** MAILING ADDRESS: Office of President, University of Massachusetts, 100 William T. Morrissey Blvd., Boston, MA 02125. Determined that "there wasn't any corruption in Everett, so, they (his District Attorney's Office) weren't going to be looking into it" and communicated his determination to the aforementioned Assistant District Attorneys Verner, Silvia, and Lee. **D.A. Leone did not cite the property owner's right under Massachusetts General Law Chapter 111, Section 123 that an Owner has 24 hours to remedy any situation or violations.** These files vanished according to the aforementioned Middlesex County District Attorney Office Special Investigator William Freeman. **In 2019, Said Plaintiff reached out to Atty. Leone via telephone with the claim that his determination to not conduct an investigation in 2010 effected a denial of due process of law and civil rights. Atty. Leone issued a verbal denial of Said subject matter. Atty. Leone stated "it was Verner's issue now".** Atty. Leone had no interest in the matter and refused to contact the Middlesex Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main Character, James "Whitey" Bulger) of the threatening contact. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus put a cease-and-desist order on the Abandoned Property process.**

- **Attorney Jonathan Silverstein, KP Law (formerly Kopelman & Paige);** WORK ADDRESS: 101 Arch Street, Boston, MA 02110. Atty. Silverstein, with Attorney Janelle Austin (see separate listing), and Attorney Leonard Kopelman (see separate listing) defaulted in Middlesex Superior Court on a $500,000 Claim (July 2012) against the City of Everett. The Attorneys for the Defense claimed they misplaced the File and forgot to go to Court. In fact, the Defendants pleaded with the Plaintiff to remove the Default for these reasons. The Plaintiff showed Goodwill and allowed this unusual request to occur with the anticipation that the City of Everett and KP Law would soon deal in a fair and equitable manner. KP Law Associates then immediately convinced the Judge to

place a $100,000 Liability Cap on any future settlement. Later, in April 2017, KP Law was notified by Plaintiff's former Attorney Theodore Folkman of the below-referenced Witness to Plaintiff Deposition Contact of "new (subpoena-generated & verified) evidence". (previously Plaintiff terminated his representation by his former Attorneys Berman & Doubleday for their refusal to remove the aforementioned Gennaro Angiulo from the Witness List). In subsequent dealings in 2016-2017 with Said Plaintiff Counsel Atty. Michael P. Utke (see separate listing), KP Law Associates utilized a "Everyone knows this is intentional so the City of Everett will not have to pay Strategy" in an educational and coaxing fashion with Atty. Utke to secure a $35,000 Settlement that the Plaintiff never agreed to accept for his loss of his Subject Property. KP Law had convinced Atty. Utke that "everyone knows this was intentional". (as referenced to then-Assistant City Solicitor Murphy refusing to execute an agreement at the table of the October 15, 2009 Hearing and her failure to deliver the keys at the Hearing). KP Law was also copied in later years about the below-referenced Board-Up dispute with the aforementioned Action Emergency Services. (An approximate $10,000 Bill dismissed on November 19, 2010). **KP Law also claimed that the aforementioned Assistant City Solicitor Murphy did not have the authority to sign an Agreement for the City of Everett -only the Mayor could sign Agreements.**

- **Attorney Janelle Austin, KP Law (formerly Kopelman & Paige);** WORK ADDRESS: 101 Arch Street, Boston, MA 02110. Atty. Austin, with the aforementioned Atty. Silverstein, and Attorney Leonard Kopelman (see separate listing) defaulted in Middlesex Superior Court on a $500,000 Claim (July 2012) against the City of Everett.  The Attorneys for the Defendant claimed they misplaced the File and forgot to go to Court. In fact, the Defendants pleaded with the Plaintiff to remove the Default for these reasons. The Plaintiff showed Goodwill and allowed this unusual request to occur with the anticipation that the City of Everett and KP Law would soon deal in a fair and equitable manner. KP Law Associates then immediately convinced the Judge to place a $100,000 Liability Cap on any future settlement. Later, in April 2017, KP Law was notified by Plaintiff's former Attorney Theodore Folkman of the below-referenced Witness to Plaintiff Deposition Contact of "new (subpoena-generated & verified) evidence". (previously Plaintiff terminated his representation by his former Attorneys Berman & Doubleday for their refusal to remove the aforementioned Gennaro Angiulo from the Witness List). In subsequent dealings in 2016-2017 with Said Plaintiff Counsel Atty. Michael P. Utke (see separate listing), KP Law Associates utilized a "Everyone knows this is intentional so the City of Everett will not have to pay Strategy" in an educational and coaxing fashion with Atty. Utke to secure a $35,000 Settlement that the Plaintiff never agreed to accept for his loss of his Subject Property. KP Law had convinced Atty. Utke that "everyone knows this was intentional". (as referenced to then-Assistant City Solicitor Murphy refusing to execute an agreement at the table of the October 15, 2009 Hearing and her failure to deliver the keys at the Hearing). KP Law was also copied in later years about the below-referenced Board-Up dispute with the aforementioned Action Emergency Services. **KP Law also claimed that the aforementioned Assistant City Solicitor Murphy did not have the authority to sign an Agreement for the City of Everett -only the Mayor could sign Agreements.**

- **Attorney Leonard Kopelman, KP Law (formerly Lead Partner of the former Kopelman & Paige);** MAILING ADDRESS: Law Offices of Brooks & DeRensis, 260 Franklin Street, Suite 700, Boston, MA 02110. Atty. Kopelman, with the aforementioned Atty. Silverstein, and the aforementioned Atty. Austin defaulted in Middlesex Superior Court on a $500,000 Claim (July 2012) against the City of Everett.  The Attorneys for the Defense claimed they misplaced the File and forgot to go to Court. In fact, the Defendants pleaded with the Plaintiff to remove the Default for these reasons. The Plaintiff showed Goodwill and allowed this unusual request to occur with the anticipation that the City of Everett and KP Law would soon deal in a fair and equitable manner.

KP Law Associates then immediately convinced the Judge to place a $100,000 Liability Cap on any future settlement. Later, on April 25, 2017, KP Law was notified by Plaintiff's former Attorney Theodore J. Folkman of the below-referenced Witness to Plaintiff Deposition Contact of "new (subpoena-generated & verified) evidence". (previously Plaintiff terminated his representation by his former Attorneys Berman & Doubleday for their refusal to remove the aforementioned Gennaro Angiulo from the Witness List). In subsequent dealings in 2016-2017 with Said Plaintiff Counsel Atty. Michael P. Utke (see separate listing), KP Law Associates utilized a "Everyone knows this is intentional so the City of Everett will not have to pay Strategy" in an educational and coaxing fashion with Atty. Utke to secure a $35,000 Settlement that the Plaintiff never agreed to accept for his loss of his Subject Property. KP Law had convinced Atty. Utke that "everyone knows this was intentional". (as referenced to then-Assistant City Solicitor Murphy refusing to execute an agreement at the table of the October 15, 2009 Hearing and her failure to deliver the keys at the Hearing). KP Law was also copied in later years about the below-referenced Board-Up dispute with the aforementioned Action Emergency Services. **KP Law also claimed that the aforementioned Assistant City Solicitor Murphy did not have the authority to sign an Agreement for the City of Everett -only the Mayor could sign Agreements.**

- **Linda Mondano, Deposition Stenographer for KP Law;** MAILING ADDRESS: Leavitt Reporting, Inc., 119 Broad Street, Weymouth, MA 02188. During the course of the March 7, 2016 Deposition where the Plaintiff was asked to state personal identification information, telephone number, and testimony, Ms. Mondano asked a question following one (1) of the aforementioned Atty. Austin many exits from the Conference Room. She asked if she "could ask a question off the record?" Said Plaintiff received permission from his then-Counsel, Atty. Neil Berman. Ms. Mondano only had questions about one (1) specific witness on his approximately 43 person Witness List. Ms. Mondano asked how the Plaintiff would spell "Gennaro Angiulo"? Next, Ms. Mondano asked if Mr. Angiulo was portrayed in the "Black Mass" Film? Finally, Ms. Mondano asked "if Mr. Angiulo was the Head of New England Organized Crime"? Ironically, the Plaintiff received a telephone call during Said Deposition from the Office of this potential Witness in question. **This potential Witness (Mr. Angiulo) did not have an updated telephone number for the Plaintiff since their last interaction about a mis-directed approximate $10,000 Board-Up Bill from April 22, 2009 that was subsequently dropped by Action Emergency Services before a jury was convened at Malden District Court in the Fall of 2010.**

- **Middlesex Assistant District Attorney Samuel Miller;** MAILING ADDRESS: Office of Middlesex County District Attorney, 151 Warren Street, Lowell, MA 01852.Within a day after the March 7, 2016 Deposition, Plaintiff brought information to ADA Miller at the Middlesex District Attorney's Office in Woburn, MA regarding the phone contact during the Deposition from the aforementioned Witness Angiulo's Revere Office and the conversation between Plaintiff and the self-described General Manager of Action Emergency Services the following day with the advice to "keep you out of Court". After receiving documents and after multiple phone conversations, ADA Miller said he would take care of it. Plaintiff wanted ADA Miller to notify the Court of the threatening contact. These files vanished according to Middlesex County District Attorney Office Special Investigator William Freeman (see separate listing). **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation.**

- **Then-Middlesex County District Attorney Office Special Investigator William Freeman;** MAILING ADDRESS: 65 Selwyn Road, Belmont, MA 02478. Special Investigator Freeman and Victim Advocate Anne Foley (see separate listing) finally met on September 26, 2016, after repeated attempts to get a meeting to discuss the March 2016 Intake with the aforementioned ADA Sam Miller about the haunting telephone call during the March Deposition regarding

Witness to Plaintiff Contact. After a few hours of Intake, Special Investigator Freeman and Victim Advocate Foley decided to conduct a Call Data Review. Investigator Freeman issued a subpoena of the telephone records that would soon determine the verified Witness to Plaintiff contact. A few days later, Investigator Freeman called to say "everything you said is true". Plaintiff wanted Freeman to notify the Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main Character, James "Whitey" Bulger) of the threatening contact. He concluded with the statement that "he would take care of it". (Bring to Judge Krupp). **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to Judge Krupp would trigger an investigation due to the "new (subpoena-generated & verified) evidence".**

- **Middlesex County District Attorney Office Victim Advocate Anne Foley;** WORK ADDRESS: Office of Middlesex County District Attorney, 15 Commonwealth Avenue, Woburn, MA 01801. Victim Advocate Anne Foley and the aforementioned Special Investigator Freeman finally met on September 26, 2016, after repeated attempts to get a meeting to discuss the March 2016 Intake with the aforementioned ADA Sam Miller about the haunting telephone call during the March Deposition regarding Witness to Plaintiff Contact. After a few hours of Intake, Special Investigator Freeman and Victim Advocate Foley decided to conduct a Call Data Review. A few days later, Investigator Freeman called to say "everything you said is true". Plaintiff wanted Freeman to notify the Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main Character, James "Whitey" Bulger) of the threatening contact. In 2020, Ms. Foley stated "Investigators were on it". Ms. Foley has not returned recent repeated telephone calls or replied to emails from the Plaintiff since this last conversation while the Plaintiff is looking for missing Files in the Middlesex & Suffolk District Attorney Offices, Attorney General's Office, and the City of Everett Police and Public Works Department. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation due to the "new (subpoena-generated & verified) evidence".**

- **Commonwealth of Massachusetts Inspector General Investigator Jack Myers;** WORK ADDRESS: Office of the Inspector General, One Ashburton Place, Boston, MA 02108. After reviewing Plaintiff documents, Mr. Myers refused to bring any information to anyone in the Commonwealth of Massachusetts Government. Mr. Myers advice was to move the Case out of Middlesex County " because they all work on each others' Campaigns and are never going to help you". In fact, Mr. Myers refused to notify the Massachusetts Gaming Commission of the Action Emergency Services/Angiulo Office Witness to Plaintiff Contact during the City of Everett Deposition as they were being licensed for a Casino, stating "I'm not your Copy Boy". **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Then-Suffolk County District Attorney Office Investigator William Durette;** MAILING ADDRESS: 6 Concord Street, Charlestown, MA 02129. After being sent to Suffolk County District Attorney's Office by the Middlesex County District Attorney's Office because of the Jurisdiction of the initial call during the Said Deposition being made from Revere to Boston, Investigator Durette, Assistant Suffolk County District Attorney Vincent DeMore (see separate listing), and Suffolk County District Attorney Daniel Conley (see separate listing) finally decided to review Said Documents. Mr. Durette concluded that Mr. Angiulo's Office "may have been calling to give you (me) advice to stay out of Court because it is expensive". Mr. Durette was asked if Mr. Angiulo might have been calling to wish me a Happy St. Patrick's Day?" He said, "yes, maybe he was". The Suffolk County District Attorney's Office had no interest in the matter and refused to contact the Middlesex Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main

Character, James "Whitey" Bulger) of the threatening contact. These files have vanished according to numerous Suffolk County Employees. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Then-Assistant Suffolk County District Attorney Vincent DeMore;** MAILING ADDRESS: Henning Strategies, 141 Tremont Street, Boston, MA 02111. After being sent to Suffolk County District Attorney's Office by the Middlesex County District Attorney's Office because of the Jurisdiction of the initial call during the Said Deposition being made from Revere to Boston, Suffolk County ADA Vincent DeMore, the aforementioned Investigator Durette, and Suffolk County District Attorney Daniel Conley (see separate listing) finally decided to review Said Documents. Mr. Durette concluded that Mr. Angiulo's Office "may have been calling to give you (me) advice to stay out of Court because it is expensive". The Suffolk County District Attorney's Office had no interest in the matter and refused to contact the Middlesex Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main Character, James "Whitey" Bulger) of the threatening contact. These files have vanished according to numerous Suffolk County Employees. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.** Atty. DeMore is no longer employed in the District Attorney's Office and is now in private practice.

- **Former Suffolk County District Attorney Daniel Conley;** MAILING ADDRESS: Mintz Levin, One Financial Center, Boston, MA 02111. After being sent to Suffolk County District Attorney's Office by the Middlesex County District Attorney's Office because of the Jurisdiction of the initial call during the Said Deposition being made from Revere to Boston, Suffolk County DA Conley, the aforementioned Investigator Durette, and the aforementioned ADA Vincent DeMore finally decided to review Said Documents. Mr. Durette concluded that Mr. Angiulo's Office "may have been calling to give you (me) advice to stay out of Court because it is expensive". The Suffolk County District Attorney's Office had no interest in the matter and refused to contact the Middlesex Court (Judge Peter Krupp, former Public Defender for "Black Mass" Main Character, James "Whitey" Bulger) of the threatening contact. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Attorney Michael P. Utke, Former Counsel for Plaintiff (2016 - 2017);** WORK ADDRESS: Law Office of Michael P. Utke, 400 Trade Center Drive #5900, Woburn, MA 01801. Atty. Utke failed to properly represent Said Plaintiff by not taking his explicit direction in his Court Action. Upon returning from a KP Law meeting to discuss a possible settlement, the Plaintiff asked him, "What did they say"? Atty. Utke replied, "They said 'Everyone knows this was intentional!'" Atty. Utke then stated that "they were going to play 'The Intentional Card'". The Plaintiff never agreed to a $35,000 Settlement that Atty. Utke negotiated with the aforementioned KP Law. The Plaintiff was requesting that Mayor Carlo DeMaria sign the Settlement Agreement with the "Intentional Language". Atty. Utke allowed himself to be coaxed by the "Everyone knows this is intentional so the City of Everett will not have to pay Strategy" utilized by the aforementioned KP Law Associates Attys. Silverstein and Austin during this lengthy court action. Atty. Utke failed to

appear for a February 7, 2017 court proceeding after knowing that his attempt to withdraw as Plaintiff Counsel was denied and he had written to the Plaintiff that he did not have to appear on February 7, 2017. The settlement of approximately $35,000 was thus awarded to the Plaintiff, with approximately $14,000 being paid to Atty. Utke, despite the Plaintiff insisting the Mayor had to sign any Agreement based on past testimony by KP Law regarding Assistant Solicitor Murphy not having the authority to sign Agreements for the City of Everett.

- **Ronald Cogliano, Deputy Commissioner, Commonwealth of Massachusetts Division of Professional Licensure;** WORK ADDRESS: 1000 Washington Street, Suite 710, Boston, MA 02118. Mr. Cogliano reviewed information regarding the aforementioned City of Everett Building Inspector Michael Desmond's threats of arrest and illegal evictions and boarding/property seizure. **Mr. Cogliano concluded that the City of Everett must have its own rules because none of his 12 Staff Attorneys could find anywhere these actions would be legal. He could not find any other City or Town in the Commonwealth of Massachusetts where a Building Inspector had Powers to Arrest.**

- **Maura Looney, Assistant Clerk of the Massachusetts Supreme Judicial Court;** WORK ADDRESS: John Adams Courthouse, One Pemberton Square, Suite 2500, Boston, MA 02108. On or about January 3, 2020, Clerk Looney agreed to file new information (Witness to Plaintiff Contact) for Review. When the new information was rejected, Clerk Looney stated the new information needed to be sent back to the Middlesex Superior Court Clerk's Office but she refused to transfer it. (perhaps due to a familial relationship of one of her colleagues to one of the participants in this Court Action). Consequently, the Plaintiff was forced to Hand Deliver the new information and have it date-stamped on January 13, 2020 where it subsequently vanished until April 17, 2020. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **State Representative Joseph W. McGonagle, Jr.;** WORK ADDRESS: Massachusetts State House, Room 279, 24 Beacon Street, Boston, MA 02133. The aforementioned State Representative McGonagle (previously the aforementioned Licensed Contractor who let a past contractor use his Commercial License) failed to assist Plaintiff in his repeated attempts to gather Freedom of Information Requests from various State Agencies in his pursuit to collect evidentiary support for his Case. **It is the Plaintiff's assumption and belief that an Elected Official would be willing to assist a taxpayer whose rights were violated and there was no Due Process of Law.**

- **Nicholas Hegerty, Middlesex Superior Court Clerk's Office;** WORK ADDRESS:  Middlesex County Superior Court, Office of the Clerk, 200 Trade Center Drive, Woburn, MA 01801. Clerk Hegerty found the missing Documents of new information on April 17, 2020.  Mr. Hegerty refused to bring the January 13, 2020, Date-Stamped new information to Middlesex County Superior Court Clerk Michael Sullivan (see separate listing) for the aforementioned Judge Krupp. One (1) unidentified employee who answered the telephone stated that "they probably do not want Judge Krupp to find out anything because he may have to recuse himself and your Case will be over-turned and start all over". **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new**

(subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.

- **Attorney Matthew Day, Middlesex Superior Court Clerk's Office;** WORK ADDRESS: Middlesex County Superior Court, Office of the Clerk, 200 Trade Center Drive, Woburn, MA 01801. Atty. Day refused to bring Witness to Plaintiff Deposition Contact information to the aforementioned Clerk Michael Sullivan or provide information requested. He also refused to coordinate a meeting with Clerk Michael Sullivan. He connected Said Plaintiff to Asst. Clerk Daniel Flaherty to set up an appointment Middlesex Superior Court Clerk Michael Sullivan for a Meeting that never materialized. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Middlesex Superior Court Clerk Michael Sullivan;** WORK ADDRESS: Middlesex County Superior Court, Office of the Clerk, 200 Trade Center Drive, Woburn, MA 01801. The aforementioned Clerk Sullivan refused to meet on Witness to Plaintiff Deposition Contact or answer questions regarding the January 13, 2020 missing documents. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Then- American Civil Liberties Union Executive Director Ruth Bourquin;** WORK ADDRESS: American Civil Liberties Union, 211 Congress Street, Boston, MA 02110. Atty. Bourquin refused to do an Intake Form or investigate the Plaintiff's claims that his Civil Rights and the Rights of his eight (8) Tenants (mostly Minority) were violated from April 22, 2009 forward to this Filing. Atty. Bourquin expressed to the Plaintiff that "there were not enough victims to look into the Incident". **It is the Plaintiff's assumption and belief that the Executive Director of the American Civil Liberties Union and her/his Staff Members would be willing to assist 8-10 people whose rights were violated and there was no Due Process of Law.**

- **Middlesex District Attorney Marian Ryan;** WORK ADDRESS: Office of Middlesex County District Attorney, 15 Commonwealth Avenue, Woburn, MA 01801. Middlesex DA Ryan refused to meet on Witness to Plaintiff Deposition Contact in person. In late October 2020, DA Ryan sent Massachusetts State Police Investigator Michael Sullivan and a Saugus Police Detective to the home of the Plaintiff regarding the missing Files and Witness to Plaintiff Deposition Contact claims. Repeated follow-up telephone calls and emails have not been responded to by any representatives of DA Ryan's Office. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Middlesex District Attorney Investigator Mary O'Neil;** WORK ADDRESS: Office of Middlesex County District Attorney, 15 Commonwealth Avenue, Woburn, MA 01801. Investigator O'Neil informed Plaintiff in a July 3, 2020 email that the District Attorney's Office did nothing with the subpoena-generated & verified Call Data Review Information conducted by her office in September 2016. This CDR was done with the understanding that the findings (Action Emergency Services Office Call) would be brought to the Superior Court Judge. Investigator

O'Neil has consistently refused to meet with Plaintiff since the first contact in February, 2020. Investigator O'Neil did assure Said Plaintiff that there is no issue regarding Statute of Limitations. The Plaintiff's actions were based on an accrual of recent actions and happenings versus an occurrence of actions in 2009. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Suffolk County District Attorney Rachel Rollins;** WORK ADDRESS: Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114. DA Rollins was notified in hand and with signature (Aug 2020) of Suffolk County District Attorney Investigators hiding evidence. DA Rollins refused to meet or respond to FOIA Request. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Suffolk County Investigator Michele Granda;** WORK ADDRESS: Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114.  Investigator Granda was told to meet with Plaintiff in July 2020 by the aforementioned but now- Suffolk County ADA John Verner. No contact was made in July. On Sept 10, 2020, on the grounds of the Suffolk County Offices, her Colleagues stated that a letter on this Matter was in the works. In the Fall of 2020, ADA Granda stated in a phone call that her office "does not deal with Mafia issues and you should go to the FBI." She said that she would send a letter confirming her position on the Suffolk County District Attorney's Stationery. This summation letter has not arrived as of this filing. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Suffolk County District Attorney Office Investigator Dennis O'Connor;** WORK ADDRESS: Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114. During the course of an August 2020 telephone call, Investigator O'Connor clearly stated that "even if I found the missing File I wouldn't be bringing it to DA Rollins". Investigator O'Connor was present on the ADA Granda Fall of 2020 telephone call with Plaintiff and a witness. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Boston Police Detective Robert Ridge;** WORK ADDRESS: Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114. Det. Ridge refused to take any interest in the Middlesex District Attorney's Office subpoena-generated & verified Call Data Review on the Action Emergency Services Office Call to Plaintiff at the KP Law Deposition in 2016. In fact, Detective Ridge and Plaintiff discussed issue on an August 2020 telephone call. Det. Ridge supposedly told Atty. Verner that Plaintiff was not intimidated by the call from Mr. Angiulo's Action Emergency Services Office. Det. Ridge attended the Sept 10, 2020 meeting on the grounds of the Suffolk County Offices. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present**

**"new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Suffolk County Assistant District Attorney Robert Greene;** WORK ADDRESS:  Office of Suffolk County District Attorney, One Bulfinch Place, Boston, MA 02114. ADA Greene attended the Sept 10, 2020 meeting and took no interest in the missing File or Witness to Plaintiff Deposition Contact. Along with the aforementioned Det. Ridge and Atty. Verner, he instructed Plaintiff on Filing Affidavit and Motion for Hearing at Middlesex Superior Court for the Witness to Plaintiff Deposition Contact. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Then-City of Everett Public Works Director Greg St. Louis;** MAILING ADDRESS: Watertown Department of Public Works, 124 Orchard Street. Watertown, MA 02472. Director St. Louis refused to provide City of Everett information regarding missing documents regarding DPW Files on Plaintiff's former Property at #50 Liberty Street. Specifically, in 2008, GTA Contracting (owned by the aforementioned Gregory T. Antonelli) was referred to replace the water main at Said Property after a mysterious flood. Upon greeting Plaintiff, Mr Antonelli stated that he "wanted to buy the house". The Plaintiff said that "It was not for sale". Mr. Antonelli relentlessly asked to buy the Said Property while digging the water main. **After follow-up inquiries, multiple DPW Employees stated the File was empty for the time period from 2007-2010 but there was other paperwork from before and after this period.** A DigSafe Permit cannot be located from the local Utility Company. On October 16 and October 24, 2008, Said Plaintiff was forced to pay Mr. Antonelli approximately $1,275 cash from two (2) separate bank withdrawal instances by force and intimidation (as notified to the Saugus Police who contacted Mr. Antonelli and warned him to stay away from the Plaintiff).

- **City of Everett Police Captain Paul Landry;** WORK ADDRESS:  Everett Police Department, 45 Elm Street, Everett, MA 02149. After the aforementioned Middlesex ADA Casey Silvia sent Plaintiff to Everett Police Department in July 2020 to file a Civil Rights Complaint, the Desk Officer first refused to take the Complaint. After Plaintiff asked members of the Everett City Council for assistance, the Everett Police Department took the Complaint where it supposedly was sent to the Middlesex District Attorney's Office.  In the Winter/Spring of 2021, Captain Landry stated that "nothing had been done and there aren't any Documents". This File cannot be found at the Everett Police Department.

- **City of Everett Mayor's Office, Chief of Staff, Erin Deveney;** WORK ADDRESS: 484 Broadway, Everett, MA 02149. Ms. Deveney has ignored Plaintiff's FOIA Request for Documents (March 2021) after Plaintiff was directed to Ms. Deveney by an automatic email from former DPW Director St. Louis.

- **Commonwealth of Massachusetts Attorney General's Office, Abandoned Property Division, Attorney Eli Reusch;** WORK ADDRESS:  One Ashburton Place, Boston, MA 02108. After finally responding to the FOIA Request regarding their Receivership process of Said Property, Atty. Reusch refused to assist with bringing new information forward to Middlesex Superior Court Judge Krupp or Superior Court Clerk Michael Sullivan. Documents also show that the City of

Everett first connected with the Abandoned Property Division four (4) days after they had dismissed the Five (5) Citations at Malden District Court on October 15, 2009.  Documents also show that Mayor Carlo DeMaria's self- described "Campaign Financier" and the Firm of then-City of Everett Director of Constituent Services Jamie Russo's long-time friend/employee Frank Amato was named as a Receiver by the aforementioned Atty. Gregory Dekermenjian prior to Mr. Russo's friend, Gregory T. Antonelli, purchasing Plaintiff's property for $150,000 in November 2010 when the Bank was steered away from the aforementioned approximate $219,000 purchase offer. According to a 2021 FOIA filed with the Massachusetts Attorney General's Office, it was discovered that there was an unsigned letter describing uncovered wires "all over the place" that had not been included in an Original Document Request in 2011 by then-Counsel for the Plaintiff, Atty. Frederick Hayes. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Law Enforcement Agency would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Commonwealth of Massachusetts Trial Court Attorney Alexander Philipson;** WORK ADDRESS: Executive Office of the Trial Court, One Pemberton Square, Boston, MA 02108. Atty. Phillipson refused to bring the Action Emergency Services/Angiulo's Office Witness to Plaintiff Deposition Contact new information to Judge Peter Krupp even though Plaintiff was sent to Chief Justice Judith Fabricant by one (1) of her Middlesex Employees. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Judicial Court Representative would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Commonwealth of Massachusetts Trial Court Chief Justice Judith Fabricant;** WORK ADDRESS: Executive Office of the Trial Court, One Pemberton Square, Boston, MA 02108. Chief Justice Fabricant refused to bring Action Emergency Services/Angiulo's Office Witness to Plaintiff Deposition Contact to Judge Peter Krupp even though Plaintiff was sent to her by one (1) of her Middlesex Employees. **It was the Plaintiff's belief and assumption that providing documentation of violations of personal rights to a Judicial Court Representative would trigger an investigation of any suspected wrong-doings and thus provide a reason to present "new (subpoena-generated & verified) evidence" to Judge Krupp to have the Case remanded back to Step One.**

- **Atty. Luz A. Carrion, Massachusetts Board of Bar Overseers;** WORK ADDRESS: 99 High Street, Second Floor, Boston, MA 02110. Atty. Carrion investigated a Claim against the aforementioned Atty. Michael P. Utke and did not allow the Plaintiff to provide all of his documentation of Said complaint for disciplinary action for not properly representing Plaintiff's wishes to only settle the Case with specific conditions. Atty. Carrion also declined to take on another Claim against the aforementioned KP Law (more specifically, the aforementioned Attorneys Silverstein and Austin) for their failure to notify the Court about the new evidence of the subpoena-generated & verified Call Data Review of "Witness to Plaintiff Contact" and their intentional failure to default a $500,000 Claim against their City of Everett client in Middlesex Superior Court. Initially. Atty. Carrion also refused to take on another Claim against the aforementioned Suffolk County Assistant DA Verner for his refusal to bring the "new (subpoena-generated & verified) evidence" documentation to the aforementioned Suffolk County District Attorney Rollins or Middlesex Court Officials.

- **Samantha McLarney, Intake Representative, Insurance Fraud Bureau of Massachusetts;** WORK ADDRESS: 101 Arch Street, Boston, MA 02110. In December 2020, Ms. McLarney conducted an extensive intake of the **Plaintiff's reporting that a $16,882.37 check was mailed to his attention in December 2020 from the City of Everett's Insurance Company (Argonaut) eleven years after the April 22, 2009 Incident,** as part of the forced Court Settlement that he never agreed to sign. Plaintiff called the Insurance Fraud Bureau of Massachusetts after reading an article in AARP Magazine and then subsequently being referred to the National Insurance Fraud Bureau who subsequently referred him to the Insurance Fraud Bureau of Massachusetts. Plaintiff also mailed the $16,882.37 (from the April 22, 2009) Incident check back to the Argonaut Insurance Company, claiming Fraud on the Court because the City had told a former Attorney (Utke) that "everyone knows that this was intentional". Plaintiff checked back with Ms. McLarney within a month and two (2) months of the intake to check on its status. As of this filing, there is no record of Ms. McLarney processing the hour-long intake form.

- **Marilyn Barrett, Intake Supervisor, Insurance Fraud Bureau of Massachusetts;** WORK ADDRESS: 101 Arch Street, Boston, MA 02110. Ms. Barrett told the Plaintiff that she could not write a letter to state that the Intake File from the aforementioned Samantha McLarney was missing nor could she write that her Insurance Fraud Bureau of Massachusetts was not investigating the Claim. Ms. Barrett told the Plaintiff that a letter would have to come from their Deputy General Counsel, Atty. Stephen M. Adams.

- **Atty. Stephen M. Adams, Deputy General Counsel, Insurance Fraud Bureau of Massachusetts;** WORK ADDRESS: 101 Arch Street, Boston, MA 02110. After repeated telephone calls and emails to Atty. Adams, the Plaintiff finally received a letter (without a copy of the extensive intake form) stating that their Bureau was declining to investigate Hotline Referral # 84066. Henceforth, Plaintiff has exhausted another avenue to present his claims about fraud, deceit, violation of his civil rights, and expectations of Due Process of Law.

## STATEMENT OF FACTS

Defendants violated Plaintiff's Fourteenth Amendment rights not to be deprived of Life, Liberty, or Property without Due Process of Law, by fictitiously commandeering Plaintiff's Property, through use of Misrepresentations, which caused Plaintiff to default on his payments, and ultimately lose his Property based on fraud. *See Fourteenth Amd Sec.1*

The Massachusetts Law addressing misrepresentation is also called Rule 10b-5. Rule 10b-5 is the basis for many fraud lawsuits. It prohibits anyone involved in the purchase or sale of a security from engaging in several fraudulent practices.

After first prohibiting General Fraud, Rule 10b-5 then addresses misrepresentation. Specifically, it says that a person may not make an "untrue statement of a material fact."

The code defines "material" to mean information of which the average investor should be informed before buying or selling a security. Although the Code does not give specific examples, some facts generally considered to be material include:

These are just a few examples of facts that could meet the definition of material. If you think your broker has misrepresented or omitted something that you should have known before investing, contact an experienced lawyer in your state.

Claims for misrepresentation and omission are similarly litigated, since the same law prohibits both. To bring a private claim under Federal Law, the plaintiff must prove several elements: a material misrepresentation or omission; scienter, which means intent; the investor's reliance on the misrepresentation or omission; an economic loss; and loss causation, or a connection between the actions and the economic loss.

In addition, a misrepresentation claim brought under state law may require that the plaintiff prove a different set of elements. In some cases, state law may be more favorable for investors, so check with a lawyer in your state to learn about your options for filing a claim pursuant to your state's law.

Also, under 28 U.S.C. §2680 the law provides:

(A) Any claim based upon an act or omission of an <u>employee of the Government</u>, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a <u>federal agency</u> or an <u>employee of the Government</u>, whether or not the discretion involved be abused.

(b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

**(c)**  Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and <u>section 1346(b) of this title</u> apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—

**(1)**  the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

**(2)**  the interest of the claimant was not forfeited;

**(3)**  the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

**(4)**  the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law..[1]

**(d)**  Any claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States.

**(e)**  Any claim arising out of an act or omission of any <u>employee of the Government</u> in administering the provisions of sections 1–31 of Title 50, Appendix.[2]

**(f)**  Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays that this Court will <u>ORDER</u> Defendants to collectively pay Plaintiff the full

total value of his losses, estimated value of Said Property of $1,900,000, suffered as a result of the above

listed fraudulent conduct. Also, Plaintiff requests this Court to <u>ORDER</u> the payment of any appropriate

Civil RICO (Racketeer Influenced and Corrupt Organization) "Treble Damages".

**CONCLUSION AND COUNSEL SOUGHT**

WHEREFORE, Plaintiff urges this Court to <u>GRANT</u> this Motion and appoint Counsel to aid him in properly

concluding this Matter. This Motion is necessary because of Plaintiff's extraordinary attempts

(approaching dozens upon dozens of qualified Attorneys) to engage Counsel to properly represent him

23

in his Proceeding to prove that his Civil Rights were violated since the April 22, 2009 Incident. Such responses from either engaged Attorneys or prospective Attorneys have ranged from the following responses TO WIT: "This would make a great Mob Movie, I'm Out" (consequently precipitating the refund of a $2,000 Retainer); "Drop the Case"; "This is a dangerous thing you are doing"; "How's your life?"; "How are you still walking around?"; and "Have you been shot or stabbed yet?". To Reiterate, Plaintiff urges this Court to <u>GRANT</u> this Motion and appoint Counsel to aid him in properly concluding this Matter.

**Respectfully submitted this** 5th **day of** July , **2021.**

### CERTIFICATE OF SERVICE

I, James P. Ryan, do hereby certify that I have properly served a full and complete copy of the foregoing complaint upon each of the Defendants at their respective addresses listed above under Parties, by United States Postal Service, (certified mail) with the proper postage affixed. Confirmation of their receipt of Said complaint, shall be filed with the Clerk of this Court at a later date.

**DATE:** 7/15/2021

James P. Ryan
1268 Broadway
Unit C, #247
Saugus, MA 01906
781-520-0612