UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES P. RYAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 21-11158-NMG |
| | ) |
| CARLO DEMARIA, JR., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
[Docket Nos. 8, 16, 22, 80, 82, 86, 90, 91, 100, 104, 110]

January 25, 2022

Boal, M.J.

This action arises from pro se plaintiff James Ryan's grievances regarding rental property that he used to own in Everett, Massachusetts. He appears to be challenging the evacuation of the property in 2009 due to alleged building code violations, the foreclosure of the property in 2010, and the alleged failure of various individuals over the years to resolve his grievances regarding these events. He has sued more than fifty individuals in the public and private sectors, including the Mayor of Everett and his counsel, former lawyers, current and former state prosecutors, a state judge, and state trial court personnel. Defendants have moved to dismiss all claims against them. Docket Nos. 8, 16, 22, 80, 82, 86, 90, 91, 100, 104, 110.[1] For the following reasons, this Court recommends that Judge Gorton grant the motions.

---

[1] On July 26, 2021, Judge Gorton referred the case to the undersigned for full pretrial proceedings, including report and recommendation on dispositive motions. Docket No. 5.

I.      FACTUAL BACKGROUND[2]

A.      General Allegations

On April 22, 2009, Ryan was the owner of property located at 50 Liberty Street, Everett, Massachusetts (the "Property").  Complaint at 1.  Ryan purchased the Property from his father on or about June 1, 1998.  Id.  The Property had been used as an eight-unit rental complex since Ryan's family's ownership began in 1959, a fact that Ryan alleges was openly known and approved by the City of Everett.  Id.  Multiple city departments carried out regular inspections of the Property.  Id.

On the afternoon of April 2, 2009, a false fire alarm at the Property caused Ryan to be summoned to the Property to investigate the problem.  Id. at 2.  When Ryan arrived at the Property, City Building Inspector Michael Desmond and Fire Lt. Paul Calderwood were already inside the Property's doorway.  Id.  Desmond said to Ryan, "Remember me? . . . Tell everyone to move out . . . This is a three (3) family and you have five (5) illegal apartments."  Id.

Desmond ordered that the Property be vacated immediately, "with everyone under the threat of arrest."  Id.  All tenants were ordered to gather all of their belongings and were expelled from the Property permanently (or until the building could be brought up to Code).  Id. Desmond threatened Ryan and the tenants with arrest if any of them "stepped foot on the

---

[2] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party."  Abdisamad v. City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020)).  Except as set forth below, see infra p. 5-6 and n.3, this Court has not considered facts presented by the parties in their memoranda of law that are not alleged in the Complaint or documents not attached the Complaint.  See Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into a motion for summary judgment).

property again." Id.

Shortly thereafter, Desmond cited Ryan for various alleged violations of city ordinances, including having five "illegal" apartments, having apartments with no second means of egress, insufficient smoke and carbon monoxide detectors, operating an illegal rooming house, and not having a sprinkler system. Id. Ryan alleges that the Property was boarded up and all tenants were forced to leave despite the City's failure to comply with Massachusetts law providing that notice and an opportunity to correct the nuisances must be given before action could be taken on the Property. Id.

Two weeks later, Ryan received a six-page letter dated May 4, 2009 from the City's Building Department detailing numerous building code and zoning violations at the Property, some of which were not detailed in the citation Desmond gave to Ryan. Id. at 3. According to Ryan, the letter stated that "All the violations be corrected without delay" and threatened daily penalties if the alleged violations were not corrected, "even though the Building Inspector had specifically threatened the Plaintiff with arrest if he 'stepped foot on the property again.'" Id.

On or about May 8, 2009, Ryan, through his attorney Evan Gellar, contested the alleged violations and requested a hearing in Malden District Court. Id. A hearing was initially set for May 28, 2009 but was later postponed to October 15, 2009. Id. During that time, Ryan remained barred from the Property under the threat of arrest. Id.

At the October 15, 2009 hearing, the City requested a dismissal of all citations because, according to the City Assistant Solicitor Melissa Murphy, there was "not enough evidence to go forward." Id. Nevertheless, the City requested that Ryan pay $10,000 in fines. Id. Eventually, the parties agreed to a $5,000 lien against the Property, which could be collected when the Property was sold. Id. According to Ryan, access to the Property was to be restored upon

dismissal of the case.  Id.  He alleges that "[k]eys to Plaintiff's Property were not brought to the hearing, thus violating his rights to retain his Property after the City decided that there was 'not enough evidence to go forward.'"  Id. at 3-4.  The case was continued until April 12, 2010, "but the threat of arrest was not lifted by the [sic] Att. Murphy."  Id. at 4.

According to Ryan, Attorney Murphy was supposed to prepare the lien document but, despite numerous calls by Ryan's attorneys, she never provided it to Ryan.  Id.  On April 12, 2010, Ryan appeared at the Malden District Court for a hearing, but no one representing the City appeared.  Id.  Ryan alleges that "despite the Agreement that Plaintiff would have access to the Property, Plaintiff was NOT allowed access to the Property to make the necessary repairs to obtain his rental income needed to restore and maintain the mortgage on the home, and as a direct result of this breach, the Property was foreclosed upon in June 2010 by US Bank National Association."  Id.

On November 4, 2020, U.S. Bank National Association sold the Property for $150,000 to Gregory T. Antonelli, a friend, associate, and political supporter of City of Everett Mayor Carlo DeMaria, Jr.  Id.

Ryan appears to allege that since 2009, he has contacted state and federal law enforcement agents and prosecutors in connection with his allegations, though the Complaint is unclear as to exactly what his grievances were and what he was asking the authorities to investigate.  See id. at 4-5.  He also alleges that certain evidence was not presented to the "Presiding Judge who should not have been appointed to preside over the Plaintiff's case because of past conflicts of interest with related associates of a past notorious client of said Judge."  Id. at 5.

     B.    Prior State Court Action

In 2012, Ryan brought an action against the City of Everett asserting breach of contract and tort claims arising out of the City's attempt to condemn the Property for purported violations of city ordinances.  Ryan v. City of Everett, 95 Mass. App. Ct. 1117, 2019 WL 2465232, at *1 (2019) (the "2012 State Court Action").[3]  After a judge dismissed Ryan's contract claim, but before trial commenced on the remaining tort claim, the parties agreed to settle the case for $35,000, and the city reported the case as settled to the judge on May 27, 2016.  Id.; see also Complaint at 12-13.  Ryan subsequently refused to execute a settlement agreement that did not include an admission of wrongdoing by the City.  Ryan, 2019 WL 2465232, at *1.  After several months of inaction, the city filed a motion to dismiss, or in the alternative, to enforce the negotiated settlement.  Id.  Five days before the scheduled hearing on the motion, Ryan's attorney filed a motion to withdraw from the case, which Ryan did not oppose.  Id.  When Ryan did not appear at the motion hearing, or file an opposition to the motion to enforce the settlement, the judge allowed it in part and ordered the City to pay Ryan the agreed-to settlement amount.  Id.  Judgment entered on February 22, 2017.  Id.  Ryan did not appeal from the judgment.  Id.

Almost one year later, Ryan's new counsel filed a Rule 60(b) motion to vacate the judgment.  Id.  In his supporting affidavit, Ryan alleged that his former attorney and the City had fraudulently represented to the judge that the matter was settled.  Id.  The judge denied Ryan's motion.  Id.  Ryan appealed the denial of his motion to vacate.  Id.  The Appeals Court of

---

[3] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  Metropolitan Prop. and Casualty Ins. Co. v. Savin Hill Family Chiropractic, Inc., 322 F.R.D. 151, 154 (D. Mass. 2017) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)).

Massachusetts affirmed the judge's decision.  See id. at *3.  The Massachusetts Supreme Judicial Court denied Ryan's application for further appellate review.  Ryan v. City of Everett, 483 Mass. 1102 (2019).

      C.    The Named Defendants

      Ryan has named fifty-five defendants in this action:

- *The Everett Defendants*: Ryan has named approximately thirteen current or former City Officials, including the Mayor, Carlo DeMaria, Jr., current and former building inspectors, including Desmond, and Fire Chief and Lt. Calderwood.  Ryan alleges that the Mayor used his position for his friends' financial gain.  Complaint at 6.  He further alleges that Mayor DeMaria did not offer housing and shelter assistance to the eight tenants who were displaced from the Property on April 22, 2009.  Id.

- *Jamie Russo:* According to Ryan, Jamie Russo was a "self-described 'Campaign Financier'" for Mayor DeMaria.  Complaint at 6.  Ryan alleges that, in 2007, Russo offered to purchase the Property from Ryan.  Id.  Ryan did not accept Russo's offer and Russo was "not pleased" with Ryan's decision.  Id.

- *Debra J. Breton*: Breton is a former attorney and mortgage broker for Ryan.  Ryan alleges that Breton forewarned and discouraged Ryan from accepting Russo's offer to buy the Property.  Id. at 6-7.  According to Ryan, Breton had a conflict of interest.  Id. at 7.

- *The Commonwealth Defendants*: Ryan has named several current and former officials from the Middlesex County District Attorney's Office, the Suffolk County District Attorney's Office, the Massachusetts Attorney General's Office, and the Massachusetts Trial Court.

- *The Prosecutorial Defendants*: Gerald Leone, former District Attorney ("DA") for Middlesex County; Marian Ryan, current DA for Middlesex County; Samuel Miller, Casey Silvia, and John Verner, Assistant DAs for Middlesex County; Rachael Rollins and Daniel Conley, former DAs for Suffolk County; and Vincent Demore, former Assistant DA for Suffolk County.  Ryan generally alleges that the Prosecutorial Defendants failed to investigate his allegations regarding corruption in the City of Everett and/or allegations regarding a 2016 phone call.  See, e.g., Complaint at 10-11, 15, 17-18.

- *Other DA's Office Officials*: Anne Foley, Victim Advocate with the Middlesex County DA's Office; William Freeman and Mary O'Neill, Investigators with the Middlesex County DA's Office; William Durette, Michele Granda, and Dennis O'Connor, Investigators with the Suffolk County DA's Office.  Ryan alleges that these defendants also failed to pursue his allegations.  See, e.g., id. at 13-14, 17-18.

- *The AG's Office Defendants*: Matthew Berge, Gregory Dekermenjian, former attorneys with the Massachusetts Attorney General's Office Abandoned Housing Initiative; and Eli Reusch, an Assistant Attorney General.  Ryan alleges that Berge and Dekermenjian failed to inform him of his purported rights under state law to remedy the building code violations.  Id. at 9.  He also alleges that Reusch did not bring new information to the Superior Court's attention regarding Ryan's allegations.  Id. at 19-20.

- *Judicial Defendants*: Justice Judith Fabricant, Chief Justice of the Massachusetts Trial Court; Alexander Philipson, employee of the Massachusetts Trial Court;

Maura Looney, Assistant Clerk of the Massachusetts Supreme Judicial Court; Michael Sullivan, Clerk of the Middlesex County Superior Court; and Matthew Day and Nicholas Hegerty, employees of the Middlesex Superior Court Clerk's Office.  Ryan generally alleges that the State Court Defendants failed to bring information regarding Ryan's allegations to the attention of the Clerk or Judge Peter Krupp, the judge presiding over the 2012 State Court Action.  Id. at 16, 17, 20.

- Ryan alleges that *Luz Carrion* from the Massachusetts Board of Bar Overseers ("BBO") investigated his claims against his attorney and did not allow him to provide all of his documentation regarding the allegations.  Id. at 20.  She also allegedly declined to investigate Ryan's claims regarding other attorneys and law firms.  Id.

- Ryan alleges that *Jack Myers*, an investigator with the Massachusetts Inspector General's Office, did not bring information regarding Ryan's allegations to others in state government.  Id. at 14.

• *The KP Law Defendants*: Ryan has named Attorneys Jonathan Silverstein and Janelle Austin of KP Law and Attorney Leonard Kopelman, formerly of Kopelman and Paige.  The KP Law Defendants served as defense counsel for the City of Everett in the 2012 State Court Action.  Complaint at 11-13.

• *The IFB Defendants*: Ryan has named Attorney Stephen M. Adams, Deputy General Counsel for the Insurance Fraud Bureau of Massachusetts ("IFB"); Samantha McLarney, Intake Representative for the IFB; and Marilyn Barrett, Intake Supervisor for the IFB.  Ryan appears to allege that the IFB Defendants failed to investigate his report that a

$16,882.37 check was mailed to his attention in December 2020 from the City of
Everett's Insurance Company eleven years after the April 22, 2009 incident, as part of a
forced settlement to which he never agreed.  Complaint at 21.

- *Shiva Karimi*: Attorney Kiva Sharimi represented the mortgagee of the Property during
  the foreclosure proceeding.  Complaint at 10.

- *Ruth Bourquin*: Ruth Bourquin is the Executive Director of the American Civil Liberties
  Union of Massachusetts ("ACLUM").  Complaint at 17.  Ryan alleges that Attorney
  Bourquin refused to complete an intake form or investigate Ryan's claims that his and his
  tenants' civil rights were violated.  Id.  According to Ryan, Bourquin told him that "there
  were not enough victims to look into the Incident."  Id.

- *Linda Modano*:[4] Modano is a stenographer who recorded Ryan's deposition in the 2012
  State Court action.  See Complaint at 13.  Ryan alleges that during a break in the
  deposition, Modano asked whether she could ask a question "off the record" and asked
  how to spell the name Gennaro Angiulo.  Id. She also allegedly asked whether Angiulo
  was portrayed in the Black Mass film and whether he was the head of New England
  organized crime.  Id.  In addition, Ryan alleges that, during the deposition, he received a
  call from the office of "this potential Witness in question," which he then identifies as
  Angiulo.  Id.

- *Michael P. Utke*: Utke represented Ryan in the 2012 State Court Action.  Complaint at
  15.  Ryan alleges that Utke failed to represent him properly by not taking his explicit
  direction in the 2012 State Court Action.  Id.  He also alleges that he never agreed to the

---

[4] Ryan incorrectly identifies her in the Complaint as Linda Mondano.  See Docket No. 90 at 1.

$35,000 settlement that Utke negotiated with the City of Everett.  Id.

- *Ronald Cogliano:* Cogliano was the Deputy Commissioner of the Commonwealth of Massachusetts Division of Professional Licensure.  Complaint at 16.  Ryan alleges that Cogliano reviewed information regarding threats of arrest, evictions, and boarding of his Property made by the City of Everett Building Inspector Desmond.  Id.  According to Ryan, Cogliano made certain conclusions regarding the legality and propriety of Desmond's actions, suggesting (but not expressly alleging) that Cogliano should have taken some action in response to Desmond's actions but did not.  Id.

Ryan has also named State Representative Joseph W. McGonagle, Boston Police Detective Robert Ridge, Suffolk County Assistant DA Robert Greene,[5] and Middlesex County Assistant DA Warren Lee.  These Defendants have not yet entered an appearance in this case.[6]

D.    Ryan's Claims

Ryan's Complaint contains no causes of action.  Without specifying which claims he brings against which defendants, Ryan appears to assert (1) a violation of his Fourteenth Amendment due process rights (Complaint at 21); (2) a securities fraud claim pursuant to 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (id. at 21-22); (3) a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680 (id. at 22-23); and (4) treble damages under the Civil Racketeer Influenced and Corrupt Organization ("RICO") statute (id. at 23).

---

[5] Ryan has filed a request to amend the Complaint to change Greene's name to Bernard Greene, not Robert Greene, Docket No. 126, which Judge Gorton granted on January 20, 2022.  Docket No. 127.

[6] On November 23, 2021, this Court extended the time to serve these Defendants to January 14, 2022.  Docket No. 108.  On January 13, 2022, Ryan filed proofs of service on those Defendants. Docket Nos. 119, 122, 123, 124.  As discussed below, Ryan has not properly served these Defendants and this Court recommends dismissal of the claims against them for insufficient service of process.

II.     <u>ANALYSIS</u>

    A.     <u>Standard Of Review</u>

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  <u>Abdisamad</u>, 960 F.3d at 59 (quoting <u>Saldivar v. Racine</u>, 818 F.3d 14, 18 (1st Cir. 2016)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  <u>Id.</u> (quoting <u>Barchock v. CVS Health Corp.</u>, 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations."  <u>In re Montreal, Maine & Atlantic Railway, Ltd.</u>, 888 F.3d 1, 6 (1st Cir. 2018) (quoting <u>Shay v. Walters</u>, 702 F.3d 76, 82 (1st Cir. 2012)).  The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Id.</u> (quoting <u>Jane Doe No. 1 v. Backpage.com, LLC</u>, 817 F.3d 12, 24 (1st Cir. 2016)).

A document filed by a <u>pro se</u> party "is to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).  <u>See also</u> Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

    B.     <u>Ryan's Complaint Does Not Comply With Rule 8 Pleading Requirements</u>

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

requirement is meant to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Calvi v. Knox Cty., 470 F.3d 422, 430 (1st Cir. 2006) (quoting Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)).  Although the Complaint is long and describes numerous events that took place over a span of approximately twelve years, Ryan fails to plead basic facts necessary for the Defendants to understand and respond to the charges levied against them.  He has failed to identify which claims he brings against which Defendants and it is very difficult to ascertain exactly what he claims each of them did to give rise to liability under the legal claims he mentions in the Complaint.

For example, Ryan alleges that Russo offered to purchase the Property from Ryan but Ryan refused to accept Russo's offer based on the "puzzling advice" of his lawyer, Debra Breton.  Complaint at 6.  He also alleges that Russo was not pleased with Ryan's decision.  Such facts, even if true, do not allege any wrongdoing by Russo.  Similarly, Ryan alleges that Modano, a stenographer, asked some clarifying questions during Ryan's deposition in the 2012 State Court Action.  Id. at 13.  Such allegations do not appear to give rise to any actionable claim.[7]

The Complaint makes lengthy, disjointed, and repetitive allegations regarding various parties' roles in connection with the Property and prior litigation but there is no specific count or claim actually asserted against each of the defendants beyond general allegations of "fraud" and "due process" allegedly committed by all Defendants.  "While the 'First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers,' 'this cannot be taken to

---

[7] Ryan appears to suggest that there was a link between Modano's questions at the deposition and a call he allegedly received from Gennaro Angiulo.  Id.  Even if true, those allegations alone do not give rise to an actionable claim.

mean that pro se complaints are held to no standard at all.'" Phelps v. Local 0222, No. 09-11218-JLT, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (quoting Green v. Commonwealth of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985)).  Ryan's Complaint falls into the category of pleadings that are "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (quoting Black v. UNUM Provident Corp., 245 F.Supp.2d 194, 197 (D. Me. 2003)).  Accordingly, Ryan's Complaint is subject to dismissal for failure to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure.

      C.      <u>The Majority Of Ryan's Claims Are Untimely</u>

      Ryan's claims have statutes of limitations ranging from two to four years.  See 28 U.S.C. § 2401 (cause of action under FTCA has a two-year statute of limitations); 18 U.S.C. § 1962 (civil RICO claim has a four-year statute of limitations); Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002) (citation omitted) (Rule 10b-5 claims "must be commenced within one year after discovery of the facts constituting the violation and within three years after such violation."); Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (Section 1983 claims borrow the forum state's limitation period governing personal injury causes of action, which in Massachusetts is three years).  Ryan's allegations stem from an incident at the Property in 2009, the foreclosure of the Property in 2010, state court litigation that commenced in 2012, a purported settlement in 2016, and a final judgment entered on February 22, 2017.  He filed this action on July 15, 2021. Docket No. 1.  As such, more than four years had passed since the events giving rise to his claims and the majority of his claims are barred by the applicable statute of limitations.[8]

---

[8] Ryan appears to make allegations regarding some of the Defendants' failure to investigate his claims in 2019 and 2020.  See, e.g., Complaint at 17 (alleging that in late October 2020, defendant Middlesex DA Ryan sent an investigator and a police officer to Ryan's home "regarding the missing Files and Witness to Plaintiff Deposition Contact claims.").  Although

D.      To The Extent That Ryan's Complaint Challenges The Judgment In The State
        <u>Court Action, It Is Subject To Dismissal Under The Rooker-Feldman Doctrine</u>

Several Defendants argue that the <u>Rooker-Feldman</u> doctrine bars Ryan's claims.  <u>See</u>

Docket No. 26 at 7, Docket No. 87 at 7-9, Docket No. 101 at 16, Docket No. 111 at 6-7.  The

<u>Rooker-Feldman</u> doctrine implicates the Court's subject matter-jurisdiction.  <u>Mills v. Harmon</u>

<u>Law Offices, P.C.</u>, 344 F.3d 42, 44 n. 1 (1st Cir. 2003).   The doctrine arose from two Supreme

Court decisions, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia</u>

<u>Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  <u>See Davison v. Gov't of Puerto Rico-Puerto</u>

<u>Rico Firefighters Corps.</u>, 471 F.3d 220, 222 (1st Cir. 2006).  "In both of these cases, state-court

losers instituted federal suits complaining of injuries caused by the state-court judgments

rendered against them and asking the federal courts to review and reject those judgments."  <u>Id.</u>

The Supreme Court held that the lower federal courts do not have subject matter jurisdiction to

review final judgments of state courts; only the Supreme Court has such jurisdiction under 28

U.S.C. § 1257.  <u>Id.</u>

In <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, "the Supreme Court reined in the

lower courts' application of <u>Rooker-Feldman</u>, limiting the doctrine to [] those kinds of cases

from which the doctrine derived."  <u>Id.</u> (citing <u>Exxon Mobil Corp.</u>, 544 U.S. 280, 284 (2005)).

"Post-<u>Exxon</u>, the lower courts cannot rely on <u>Rooker-Feldman</u> to dismiss a case unless, <u>inter</u>

<u>alia</u>, the federal plaintiff seeks redress of an injury *caused by* an allegedly erroneous state court

decision; if the plaintiff alleges a constitutional violation by an adverse party independent of the

injury caused by the state court judgment, the doctrine does not bar jurisdiction."  <u>Id.</u> (emphasis

_____

such allegations fall within the statute of limitations, they are dismissable for other reasons as
discussed below.

in original; citations omitted).

In <u>Exxon</u>, the Supreme Court stressed that 28 U.S.C. § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate a matter previously litigated in state court." <u>Exxon</u>, 544 U.S. at 293. If a federal plaintiff presents some independent claim, one in which he is not simply complaining of the state court judgment itself, "then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." In other words, the <u>Rooker-Feldman</u> doctrine is narrow, prohibiting only <u>de facto</u> appeals of state court judgments, and distinct from the law of issue and claim preclusion. <u>See</u> <u>Lance v. Dennis</u>, 546 U.S. 459, 466 (2006); <u>see also</u> <u>Klimowicz v. Deutsche Bank Nat'l Trust Co.</u>, 907 F.3d 61, 66 (1st Cir. 2018) ("[T]he Rooker-Feldman doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit"; rather, "the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment."). "<u>Rooker-Feldman</u> is not simply preclusion by another name." <u>Lance</u>, 546 U.S. at 466.

In large part because Ryan's complaint is confusing and disjointed, it is difficult to determine whether in fact Ryan is seeking relief from the judgment in the 2012 State Court Action[9] or asserting legal wrongs allegedly perpetrated by the various defendants, independent of any injury caused by the judgment in the 2012 State Court Action. To the extent that Ryan's Complaint may be read as attempting to appeal the judgment of the state court, it is subject to dismissal under the <u>Rooker-Feldman</u> doctrine. In any event, the complaint is dismissable on several other grounds as discussed below.

---

[9] The Commonwealth Defendants mention a judgment entered in a forfeiture action in Malden District Court, <u>see</u> Docket No. 101 at 16, but the record before this Court does not contain any details regarding that judgment.

E.     Res Judicata

The KP Law and Everett Defendants argue that Ryan's claims are barred by the doctrine of res judicata.  Docket No. 26 at 7; Docket No. 105 at 8-10.  "A federal court is generally bound under res judicata to give the same preclusive effect to a state court judgment as would be given to it by a local court within that state."  FPL Energy Maine Hydro LLC v. F.E.R.C., 551 F.3d 58, 63 (1st Cir. 2008).  "Res judicata 'makes a valid final judgment conclusive on the parties . . . and prevents relitigation of all matters that were or could have been adjudicated in the action.'"  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008) (quotation omitted).  Under Massachusetts law, res judicata requires the presence of three elements: "(1) the identity or privity of the parties to the present and prior actions; (2) the identity of the cause of action; and (3) prior final judgment on the merits."  Bui v. Ma, 62 Mass. App. Ct. 553, 579 (2004) (citations omitted).  A plaintiff is precluded from litigating not only those claims that were actually decided but those that could have been brought in that action.  Id.

It appears that the third element has been satisfied.  See Ryan v. City of Everett, 95 Mass. App. Ct. 1117 (2019).  The KP Law and Everett Defendants were not parties to the State Court Action and they have not addressed the identity or privity of the parties element of res judicata. With respect to identity of the cause of action, "Massachusetts deems causes of action identical for claim preclusion purposes if they 'grow out of the same transaction, act, or agreement, and seek redress for the same wrong.'"  Andrew Robinson Int'l, Inc., 547 F.3d at 52 (quoting Brunson v. Wall, 405 Mass. 446 (1989) (internal modifications omitted)).

On the record before this Court, I am unable to make a determination regarding the identity of the causes of action.  The parties have not provided to the Court a copy of the complaint in the 2012 State Court Action.  The only information before this Court regarding the

allegations in the 2012 State Court Action is the statement in the Appeals Court's decision that "[i]n 2012, Ryan, the former owner of a residential building in the city, brought an action against the city asserting breach of contract and tort claims arising out of the city's attempt to condemn the property for purported violations of city ordinances."  Ryan, 95 Mass. App. Ct. 1117 at *1. Though it appears likely that this element is satisfied, the Defendants have not made a sufficient showing at this stage.  See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (Dismissal on an affirmative defense, such as res judicata, can only occur if the facts that establish the defense are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice" and "the facts so gleaned [] conclusively establish the affirmative defense.").  Accordingly, I decline to recommend dismissal on this basis.

> F.   The Due Process Claim Against the KP Law Defendants, Breton,
> the IFB Defendants, Karimi, Bourquin, Modano, And Utke
> Must Be Dismissed Because They Are Not State Actors

Ryan alleges that the Defendants violated his Fourteenth Amendment due process rights. Complaint at 21.  There is no direct cause of action by an individual for a constitutional violation; rather, such a clam must be brought under 42 U.S.C. § 1983.  Tomaselli v. Beaulieu, 967 F.Supp.2d 423, 433 n.3 (D. Mass. 2013) (citations omitted).  To make a viable Section 1983 claim, a plaintiff must show, among other things, that the conduct complained of transpired under color of state law.  Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).  In addition, the Fourteenth Amendment applies only to government actors.  See Lugar v. Edmonson Oil Co., 457 U.S. 922, 924 (1982).[10]  It does not ordinarily create a right of action against private parties.

---

[10] "Section 1983's 'under color of state law' requirement is the functional equivalent of the Fourteenth Amendment's 'state action' requirement."  Santiago, 655 F.3d at 68 (citations omitted).

<u>Batavitchene v. O'Malley</u>, No. 13-10729-GAO, 2013 WL 1682376, at *6 (D. Mass. Apr. 16, 2013).

Here, Ryan does not allege, and it does not appear that he could accurately allege, that the KP Law Defendants, Breton, the IFB Defendants, Karimi, Bourquin, Modano, and Utke are state actors. The KP Law Defendants, Breton, Karimi, Bourquin, and Utke are private lawyers and Ryan's allegations against them appear to be related to their function as attorneys for him or others. <u>See</u> Complaint at 6, 10, 11-13, 15, 17. "It is well-settled that a lawyer does not act under the color of state law in performing a lawyer's traditional function as counsel to a party." <u>Batavitchene</u>, 2013 WL 1682376, at *6 (citing cases).

The IFB Defendants are employees of the Massachusetts Insurance Fraud Bureau ("IFB") and Ryan alleges that they were acting in their capacity as such in connection with his allegations against them. <u>See</u> Complaint at 21. The IFB is a private investigative agency funded by two private voluntary associations of Massachusetts insurance carriers. <u>See</u> <u>Commonwealth v. Ellis</u>, 429 Mass. 362 (1999). As such, employees of the IFB are not state actors. <u>See</u> <u>United States v. Pimental</u>, 199 F.R.D. 28, 34 (D. Mass. 2001) (finding that the IFB should be treated as a private agency employing private investigators, rather than as a government agency employing government personnel).

Finally, there are no allegations that Modano is a state employee. Rather, the Complaint states that she is a "Deposition Stenographer for KP Law." Complaint at 13. As such, she is also not a state actor. Accordingly, I find that Ryan's due process claim against the KP Law Defendants, Breton, the IFB Defendants, Karimi, Bourquin, Modano, and Utke must be dismissed.

G.     Ryan Has Failed To State A Due Process Claim

The Due Process Clause of the Fourteenth Amendment, which prohibits a state from depriving any person of "life, liberty, or property, without due process of law," U.S. Const. amend XIV, § 1, has both a substantive and a procedural component.  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 879 (1st Cir. 2010) (citing DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005)).  It is not clear whether Ryan asserts a substantive or procedural due process claim in his Complaint.  In either case, he has failed to state a claim.

"The substantive component of due process protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  Id. at 880 (quoting Souza v. Pina, 53 F.3d 423, 425-426 (1st Cir. 1995)).  "The right to substantive due process is, however, confined within relatively narrow limits."  Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006).  In order to state a valid substantive due process claim, the complaint must allege a "deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (emphasis in original).  "It is bedrock law in this circuit [] that violations of state law—even where arbitrary, capricious, or undertaken in bad faith—do not, without more, give rise to a denial of substantive due process under the U.S. Constitution."  Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (citations omitted).  Nothing alleged in Ryan's complaint reaches the level of conscience-shocking behavior.  Accordingly, he has failed to state a substantive due process claim.

With respect to procedural due process, "if a state provides adequate postdeprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983 against the state

officials whose random and unauthorized conduct occasioned the deprivation." <u>Lowe v. Scott</u>,

959 F.2d 323, 340 (1st Cir. 1992) (citations omitted).  Here, Ryan had and pursued adequate

post-deprivation remedies.  He contested the alleged code violations in Malden District Court

and later brought an action against the City of Everett.[11]  Complaint at 3-4; <u>Ryan</u>, 95 Mass. App.

Ct. 1117.  Therefore, Ryan has also failed to state a procedural due process claim.

      H.      **Ryan Alleges No Act Or Omission In Connection With The Sale Of Securities <u>And, Therefore, Any Claims Arising Under Rule 10b-5 Must Be Dismissed</u>**

Ryan alleges violations of Rule 10b-5, which he erroneously describes as the

"Massachusetts law addressing misrepresentation."  Complaint at 21.  "Rule 10b-5, promulgated

by the Securities and Exchange Commission (SEC) under the aegis of section 10(b) of the

Securities Exchange Act of 1934 (Exchange Act), renders it unlawful '[t]o make any untrue

statement of a material fact . . . in connection with the purchase or sale of any security.'" <u>S.E.C.</u>

<u>v. Tambone</u>, 597 F.3d 436, 438 (1st Cir. 2010) (quoting 17 C.F.R. § 240.10b-5(b)).  To state a

cause of action under Section 10(b) and Rule 10b-5, a plaintiff must plead scienter, a material

omission or misrepresentation, and a detrimental reliance causing injury, all in connection with

the purchase or sale of a security.  <u>In re Segue Software, Inc. Securities Litig.</u>, 106 F.Supp.2d

161, 166 (D. Mass. 2000) (citing <u>Holmes v. Bateson</u>, 583 F.2d 542, 551 (1st Cir. 1978)).  There

are no allegations in the Complaint regarding the purchase or sale of any security.  Absent such

allegations, there is no viable claim under Rule 10b-5.[12]

---

[11] Indeed, it appears that he recovered damages in the State Court Action.  <u>See</u> <u>Ryan</u>, 95 Mass. App. Ct. 1117 at *1.

[12] To the extent that Ryan is attempting to bring a claim for misrepresentation and/or fraud under Massachusetts law, he has failed to allege any false statements of fact by the Defendants.  He has also failed to satisfy the heightened pleading standards for allegations of fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>Mulder v. Kohl's Dep't Stores, Inc.</u>, 865 F.3d 17, 22

I.      Ryan Has Failed To State An FTCA Claim Because None Of The
        <u>Defendants Are Employees Or Agents Of The Federal Government</u>

Ryan appears to bring a claim under the Federal Tort Claims Act ("FTCA").  <u>See</u>

Complaint at 22 (citing to 28 U.S.C. § 2680).  The FTCA, however, applies only to torts

committed by employees of the federal government.  <u>See</u> <u>Tsosie v. United States</u>, 452 F.3d 1161,

1163 (10th Cir. 2006) (citation omitted).  None of the Defendants are employees of the federal

government.  As such, Ryan has failed to state a claim under the FTCA.[13]

J.      <u>Ryan Has Failed To State A Claim Under RICO</u>

Under the heading "RELIEF SOUGHT," Ryan requests, among other things, "payment

of any appropriate Civil RICO (Racketeer Influenced and Corrupt Organization) 'Treble

Damages.'"  Complaint at 23.[14]  Section 1962(c) makes "unlawful for any person employed by

or associated with any enterprise engaged in, or the activities which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §

1962(c).  Section 1962(d) makes it unlawful to conspire to violate RICO. 18 U.S.C. § 1962(d).

To state a claim under Section 1962(c), a plaintiff must allege and prove (1) conduct; (2)

of an enterprise; (3) through a pattern; (4) of racketeering activity.  <u>Soto-Negron v. Taber</u>

---

(1st Cir. 2017) (Rule 9(b) requires that a plaintiff's averments of fraud specifically plead the
time, place and content of the alleged false representation.).

[13] In addition, the proper defendant in an FTCA action is the United States.  <u>See</u> <u>Aversa v.
United States</u>, 99 F.3d 1200, 1207 (1st Cir. 1996) ("The Westfall Act amended the FTCA to
make an action against the United States the exclusive remedy for money damages for injury
arising from the 'negligent or wrongful act or omission' of a federal employee 'acting within the
scope of his office or employment,' 28 U.S.C. § 2679(b)(1), thus eliminating the discretionary
function requirement and making federal employees absolutely immune from suit for torts
committed within the scope of employment.").

[14] This reference appears to be the Complaint's only one to the civil RICO statute.

Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (quoting N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001)).  For claims under Section 1962(d), a plaintiff must show that "the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor, which, if completed, would satisfy all the elements of a substantive [RICO] offense." United States v. Velazquez-Fontanez, 6 F.4th 205, 212 (1st Cir. 2021) (citing United States v. Rodriguez-Torres, 939 F.3d 16, 23 (1st Cir. 2019)).  The Complaint contains no allegations that would satisfy any of the elements of a RICO claim against any of the Defendants.

> K.   The Judicial and Prosecutorial Defendants
> Have Absolute Immunity From Ryan's Claims

"Absolute immunity applies to a narrow swath of public officials, including 'judges performing judicial acts within their jurisdiction,' 'prosecutors performing acts intimately associated with the judicial phase of the criminal process,' and agency officials with functions similar to judges and/or prosecutors."  Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013) (citations omitted).  "The protection afforded by an absolute immunity endures even if the official 'acted maliciously and corruptly' in exercising his judicial or prosecutorial functions." Id. (citing Wang v. N.H. Bd. of Regist. in Med., 55 F.3d 698, 702 (1st Cir. 1995)).  "It likewise endures in the presence of grave procedural errors."  Id. (internal quotation marks omitted; citing Nyestedt v. Nigro, 700 F.3d 25, 32 (1st Cir. 2012)).

"[W]hen a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions."  Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019).  Absolute quasi-judicial immunity also bars claims against court personnel performing discretionary functions which are an integral part of the judicial process.  Mabardy v. Grafton Cnty., No. 19-cv-223-PB, 2019 WL 6879365, at *9 (D.N.H. Nov. 22, 2019) (citations omitted).  Here, Ryan alleges that the Judicial Defendants refused to bring certain evidence before the judge presiding

over the State Court Action.  See Complaint at 16, 17, 20.  Therefore, he is challenging essential judicial functions allegedly performed by Justice Fabricant and the other Judicial Defendants in the processing of his claims and other submissions to the courts, all of which fall within the scope of judicial immunity.

Similarly, "prosecutors are absolutely immune in exercising the core prosecutorial functions of 'initiating prosecution and . . . presenting the State's case.'"  Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019) (citing Imbler v. Pachtman, 424 U.S. 409, 431 (1976)).  To determine when a prosecutor is entitled to absolute immunity, the Supreme Court has adopted a "functional approach," which looks to "the nature of the function performed, not the identity of the actor who performed it, nor the 'particular act' in isolation."  Id. (internal citations omitted).  Following this approach, courts have found that prosecutors are immune from suits stemming from the prosecutor's decision whether or not to investigate a potential criminal offense.  See Grant v. Hollenbach, 870 F.2d 1135, 1139 (6th Cir. 1989).

Ryan alleges that the Prosecutorial Defendants failed to investigate his allegations of corruption and other wrongdoing by Everett officials.  See Complaint at 10-11, 13, 15, 17, 18.  Therefore, the Prosecutorial Defendants are immune from Ryan's claims against them.

L.    Insufficient Service Of Process

The Everett Defendants, Utke, Cogliano, the KP Law Defendants, and the IFB Defendants have moved to dismiss the complaint because Ryan failed properly to serve the summons and Complaint on them.  Docket No. 26 at 8-9; Docket No. 87 at 12; Docket No. 92 at 10; Docket No. 105 at 10; Docket No. 111 at 4-5.  Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected.  Morales v. Spencer, 52 F.Supp.3d 362, 364 (D. Mass. 2014) (citing Omni Capital Int'l Ltd. v. Rufolf Wolff & Co., 484

U.S. 97, 104 (1987)).  Rule 12(b)(5) provides that a defendant may move to dismiss a complaint based on insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  When sufficiency of process is challenged under Rule 12(b)(5), plaintiff bears "the burden of proving proper service." Morales, 52 F. Supp. 3d at 365 (citation omitted).  "A return of service generally serves as prima facie evidence that service was validly performed, but a defendant may adduce rebuttal evidence to refute any presumption of valid service."  Id. (citation and internal quotation marks omitted).

Rule 4 of the Federal Rules of Civil Procedure sets forth the acceptable methods for service of process.  Under Rule 4(e), an individual defendant may be served in one of four ways: (1) by following the requirements of state law for serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering copies to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

The Massachusetts rules for service are substantially similar to the federal rules.  Service can be made upon an individual by "delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process. . ."  Mass. R. Civ. P. 4(d)(1).

The Everett Defendants, Utke, Cogliano, the KP Law Defendants, and the IFB Defendants were served by certified mail.  See Docket Nos. 6, 36, 40, 41, 44, 49, 50, 55, 56, 64, 67, 69.  Certified mail is not a permitted method of service of process in

Massachusetts.  See Mukherjee v. Blake, No. CIV. A. 12-11381-FDS, 2013 WL 2299521, at *3 (D. Mass. May 24, 2013) (citing Fed. R. Civ. P. 4(e); Mass. R. Civ. P. 4(d) and (e)) ("[N]either the federal rules nor the Massachusetts rules permit service of process by certified mail upon individual defendants residing within the Commonwealth.").  "Dismissal for failure to meet the service requirements of 4(m) is disfavored, however, where 'there is a reasonably conceivable means through which service may be obtained.'"  Molinelli-Freytes v. Univ. of Puerto Rico, 727 F.Supp.2d 60, 63 (D.P.R. 2010) (citation omitted).  Therefore, where service may be properly effected, the Court has discretion to quash the improper service and order the plaintiff to properly serve the defendants.  Id.

Because, as discussed above, this Court is recommending dismissal of all of Ryan's claims, it declines to recommend that Judge Gorton quash service and allow Ryan an opportunity to properly serve the Defendants.[15]

## III.    RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Gorton grant the Defendants' motions to dismiss and dismiss the Complaint in its entirety.

## IV.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

---

[15] As discussed above, Ryan has also named State Representative Joseph W. McGonagle, Boston Police Detective Robert Ridge, Suffolk County Assistant DA Bernard Greene, and Middlesex County Assistant DA Warren Lee.  Those Defendants have not entered an appearance in this case.  Nevertheless, it appears that service on them was also improper as they were served via U.S. mail.  See Docket Nos. 119, 122, 123, 124.  For that reason, the claims against them are dismissable for failure to meet the service requirements or Rule 4(m).  This Court similarly declines to recommend that Judge Gorton quash service and allow Ryan an opportunity to properly serve them because Ryan has failed to state a claim against them for many of the same reasons applicable to the moving Defendants.

party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge